*Barshay v. Naithani*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of December, two thousand twenty-three.

PRESENT:
>      GERARD E. LYNCH,
>      MICHAEL H. PARK,
>      STEVEN J. MENASHI,
>           *Circuit Judges*.

_____

Yan Barshay,

>           *Plaintiff-Appellant*,

>      v.                                                23-382

Mahesh Naithani,

>           *Defendant-Appellee.*

_____

FOR PLAINTIFF-APPELLANT:          GREGORY A. SIORIS, New York, NY.

FOR DEFENDANT-APPELLEE:          JOSHUA L. RAY (Ellen-Louise Moens *on the brief*) Candey LLC, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Failla, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant Yan Barshay brought this diversity action asserting claims for breach of contract, breach of fiduciary duty, and unjust enrichment against Defendant-Appellee Mahesh Naithani in October 2020, stating that Naithani breached an oral agreement to pay back a $100,000 loan that Barshay extended in 2003. The district court dismissed all of Barshay's claims but allowed Barshay to amend his pleadings regarding his breach of contract claim if he could allege that he and Naithani had agreed to a repayment date for the loan and that Naithani had breached by not paying by that date. Barshay did amend his complaint, leading to the Second Amended Complaint ("SAC") operative in this appeal. The district court dismissed the SAC as well, holding that a release executed by Barshay barred his remaining claim and that Barshay still failed to identify clearly when and how Naithani breached. Barshay challenges that decision on appeal. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

"We review *de novo* the grant of a motion to dismiss." *Bellin v. Zucker*, 6 F.4th 463, 472 (2d Cir. 2021). "In so doing, we must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.* (internal quotation marks omitted) (quoting *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021)). "We draw all reasonable inferences in the plaintiff's favor to determine whether the plaintiff stated a plausible claim to relief." *Id.*

2

Barshay's claim is based on an oral agreement struck in 2003. Naithani made two payments on the loan's principal and accrued interest, one in October 2016 and one in January 2018. Barshay alleges that when Naithani made the second payment, he agreed to pay a balance of $250,000 upon the sale of an entity called Medmeme LLC, where Barshay and Naithani both worked and where Naithani was president.

Around the time of that sale, Barshay executed two releases. One was titled the "Confidential Settlement Agreement and General Release" (the "First Release") and was executed by Barshay and his "Employer"—a term defined as Medmeme LLC and an associated entity called Pharmaspectra LLC. App'x at A40. In consideration for separation pay, Barshay agreed to release Medmeme, Pharmaspectra, and their "parents, subsidiaries, affiliates, predecessors, successors and any other entity related to it and all of its and their present directors, officers, employees and anyone else acting for any of them" "from all claims of any type to date, known or unknown, suspected or unsuspected, arising out of anything to do with your employment, the end of your employment, or any other matter." *Id.* The First Release also contained a merger clause that stated that: "This Agreement is the complete understanding between you and the Employer. It replaces any other agreements, representations or promises, written or oral." *Id.* at A43. Barshay signed this release on October 4, 2019. *Id.* at A44.

The other release (the "Second Release") states in full:

> In consideration of full payment by Medmeme LLC, a Delaware limited liability company, Pharmaspectra LLC, a Delaware limited liability company, Medical Intelligence Solutions LLC, a Delaware limited liability company, and Mahesh Naithani, an individual (collectively, the "Borrowers"), in the amount of One Thousand One Hundred Dollars ($1,100) on the date set forth above, I, Yan Barshay, referred to as the Lender, release and discharge the Borrowers from any claims, liabilities, or obligations of the Borrowers to the Lender.

3

*Id.* at A52. Barshay alleges that he signed the Second Release on October 4, 2019, but his signature is dated October 10, 2019.

Releases are interpreted according to the principles of contract law. *See Mangini v. McClurg*, 249 N.E.2d 386, 389 (N.Y. 1969). "Generally, a valid release constitutes a complete bar to an action on a claim which is the subject of the release." *Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 952 N.E.2d 995, 1000 (N.Y. 2011) (internal quotation marks omitted) (quoting *Global Mins. & Metals Corp. v. Holme*, 824 N.Y.S.2d 210, 214 (App. Div. 2006)). "If the language of a release is clear and unambiguous, the signing of a release is a jural act binding on the parties." *Id.* (internal quotation marks omitted) (quoting *Booth v. 3669 Del. Inc.*, 703 N.E.2d 757, 758 (N.Y. 1998)).

The Second Release unambiguously bars Barshay's claim for breach of contract. Its clear language covers "any claims, liabilities, or obligations" of the "Borrowers," including Naithani. App'x at A52. The fact that Barshay is referred to as the "Lender" in the Second Release and Naithani as a "Borrower" indicates that the Second Release covers personal loans. *Id.* The alleged repayment agreement therefore falls within the scope of the Second Release.

Barshay presents three arguments challenging this conclusion. None is persuasive. First, he argues that the Second Release must be read in the context of the First Release, either because of "special rules" for reading releases under New York law, *see* Appellant's Br. at 26 (quoting *Mangini*, 249 N.E.2d at 389), or because the two documents are part of the same transaction. Read together, he claims, the Second Release can cover only matters related to the end of his employment at Medmeme, including expenses for which he was owed reimbursement. But Barshay's reading would render the Second Release superfluous—any claims covered by the

Second Release would already be barred by the First Release. *See Spinelli v. Nat'l Football League*, 903 F.3d 185, 200 (2d Cir. 2018) ("Interpretations that render provisions of a contract superfluous are particularly disfavored." (internal quotation marks omitted) (quoting *Int'l Multifoods Corp. v. Com. Union Ins. Co.*, 309 F.3d 76, 86 (2d Cir. 2002))).

Second, Barshay argues that Naithani never mentioned the Second Release after Barshay signed it, even when Barshay continued to seek repayment. This, he claims, shows that the parties did not intend for the Second Release to cover the loan. But we cannot consider this extrinsic evidence because the terms of the Second Release are unambiguous. *See Wells v. Shearson Lehman/Am. Express*, 526 N.E.2d 8, 12 (N.Y. 1988) ("As with contracts generally, the courts must look to the language of a release—the words used by the parties—to determine their intent, resorting to extrinsic evidence only when the court concludes as a matter of law that the contract is ambiguous."); *Mateo v. Carinha*, 799 F. App'x 51, 54 (2d Cir. 2020) ("The language of the notably broad General Release is clear on its face. In such cases, courts should generally interpret the contract without reference to extrinsic evidence.").

Third, Barshay argues that there is a question of fact as to whether the Second Release was "not fairly and knowingly made." Appellant's Br. at 29 (quoting *Pacheco v. 32-42 55th St. Realty, LLC*, 33 N.Y.S.3d 301, 303 (App. Div. 2016)). But Barshay did not raise this argument below, so we do not consider it. *See Anderson Grp., LLC v. City of Saratoga Springs*, 805 F.3d 34, 50 (2d Cir. 2015) ("It is well settled that arguments not presented to the district court are considered waived and generally will not be considered for the first time on appeal.").

5

In sum, the Second Release's clear terms bar Barshay's claim.   We have considered all of Barshay's remaining arguments and find them to be without merit.   For the foregoing reasons, the judgment is **AFFIRMED.**

<div style="margin-left: 40%;">
FOR THE COURT:<br>
Catherine O'Hagan Wolfe, Clerk of Court
</div>